IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID ALBERT BYRD, | ) | Case No. 5:21-cv-90 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION**[1] |

   Plaintiff, David Albert Byrd, seeks judicial review of the final decision of the Commissioner of Social Security, denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Among other conditions, Byrd suffers from contact dermatitis. Byrd challenges the Administrative Law Judge's ("ALJ") decision on the basis that the ALJ misevaluated the opinion of his treating dermatologist, Helen M. Torok, MD. However, because Dr. Torok's opinion was patently deficient, in that it was a checklist opinion with insufficient supporting explanation for Byrd's absenteeism limitation, I find that any error the ALJ may have made was harmless. Therefore, I recommend that the Commissioner's final decision denying Byrd's application for DIB be affirmed.

---

[1] This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b).

I.      **Procedural History**

Byrd applied for DIB on June 28, 2018. (Tr. 183).[2] Byrd alleged that he became disabled on January 11, 2018 due to "1. Skin Disease Dermatitis; 2. Anxiety; 3. Pain; 4. Hypothyroidism; and 5. swelling in hands." (Tr. 183, 217). The Social Security Administration denied Byrd's application initially and upon reconsideration. (Tr. 60-74, 76-94). Byrd then requested an administrative hearing. (Tr. 116).

ALJ Jeffrey Raeber heard Byrd's case on November 13, 2019 and denied the claim in a February 10, 2020 decision. (Tr. 15-25, 35-59). In doing so, the ALJ determined at Step Four of the sequential evaluation process that Byrd had the residual functional capacity ("RFC") to perform medium work, except that:

> [Byrd can] [n]ever climb ladders, ropes, or scaffolds. Frequently reach bilaterally. Frequently reach overhead bilaterally. Cannot work with chemicals, such as coolants and oils. Avoid the use of moving machinery. Perform unskilled (SVP 1-2) work. The work environment must be free of fast-paced production requirements and involve only routine work changes.

(Tr. 19). Based on vocational expert testimony that an individual with Byrd's age, experience, and RFC could work as a hospital cleaner, counter supply worker, and hand packager, the ALJ determined that Byrd was not disabled. (Tr. 24-25). On November 10, 2020, the Appeals Council declined further review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). On January 13, 2021, Byrd filed a complaint to obtain judicial review. ECF Doc. 1.

---

[2] The administrative transcript appears in ECF Doc. 10.

II.      **Evidence**

    A.      **Personal, Educational, and Vocational Evidence**

Byrd was born on February 15, 1957 and was 61 years old on the alleged onset date. (Tr. 60, 183). Byrd completed high school in 1977 and had specialized training in machining, which he completed in 1980. (Tr. 218). Byrd had prior work as a set up operator at a machine shop, which the ALJ determined he was unable to perform. (Tr. 23, 219).

    B.      **Relevant Medical Evidence**

Byrd focuses his challenge upon the ALJ's consideration of the opinion of his treating dermatologist at Step Four of the sequential evaluation process, which is relevant only to the ALJ's assessment of functional limitations stemming from his dermatitis; thus, it is only necessary to summarize the medical and opinion evidence related to dermatitis. ECF Doc. 12 at 9-11; ECF Doc. 15 at 1-6.

On January 13, 2018, Byrd presented to Paul E. Fracasso, DO, with an "intense" rash in his hands. (Tr. 418). Byrd reported that the rash began around three weeks earlier, when he changed coolant at work. *Id.* On physical exam, Byrd had "[i]ntense extremely irritated rash palms forearms" and a less intense rash in his abdomen and low back. (Tr. 419). Dr. Fracasso diagnosed Byrd with dermatitis and prescribed prednisone. *Id.*

On January 21, 2018, Byrd reported to Dr. Fracasso that his rash had improved but then worsened when he finished his medication, spreading further. (Tr. 415). On physical exam, Byrd had an irritated rash in the lateral part of his abdomen, which was most intense in his palms. (Tr. 415-16). Dr. Fracasso prescribed prednisone and instructed Byrd to avoid exposure to irritants at work. (Tr. 416).

On February 4, 2018, Byrd reported to Dr. Fracasso that his rash persisted and that he felt his hands were swollen. (Tr. 349). On physical exam, Byrd had a rash in his forearms with diffuse erythema and irritation and extensive palm irritation, which appeared almost purulent. *Id.* Dr. Fracasso diagnosed Byrd with cellulitis and dermatitis, took a culture of the right palm, removed Byrd from his workplace, and prescribed Cipro and Bactrim. (Tr. 350).

On February 6, 2018, Byrd was admitted to the hospital due to worsening of his rash and severe upper extremity pain. (Tr. 264, 268, 271). His last exposure to coolant was on February 2, 2018. (Tr. 268). He was diagnosed with severe contact dermatitis and treated with a high potency topical steroid and wound care, which greatly improved his dermatitis and swelling. (Tr. 264, 269). Byrd was discharged on February 8, 2018 in stable condition. (Tr. 264-65).

On February 17, 2018, Byrd visited Dr. Fracasso for a post-hospitalization follow-up. (Tr. 358). Byrd reported that he had not been back to work and felt that his rash was "much better." *Id.* On physical exam, Byrd's rash was almost resolved in his forearms and he no longer had erythema. (Tr. 358-59).

On February 25, 2018, Byrd reported to Dr. Fracasso that, other than itching, his symptoms continued to improve. (Tr. 361). On physical exam, Byrd had improved arm erythema, no hand erythema, and scattered areas of exfoliation. *Id.* Dr. Fracasso recommended that Byrd stay off work for one more week, after which he should use gloves at work. (Tr. 362).

On March 3, 2018, Byrd presented to Dr. Fracasso with a new rash in his legs. (Tr. 364). On physical examination, Byrd had an extensive dry reddened rash in his legs and left foot. (Tr. 364-65). Dr. Fracasso prescribed Derma-Smoothe. (Tr. 365).

On March 27, 2018, Byrd reported to Dr. Fracasso that his forearm rash had resolved, and he was wearing gloves at work. (Tr. 367). On physical exam, Byrd had extensive thick and

4

peeling skin on his palms. (Tr. 368). Dr. Fracasso referred Byrd for a dermatological evaluation. *Id.*

On April 16, 2018, Byrd visited dermatologist Helen Torok, MD. (Tr. 326). Byrd reported that he'd had rashes for several years, but they started flaring up over the previous four months. *Id.* Byrd stated that his hands were very itchy, and his skin cracked and bled during flare-ups. *Id.* Following examination, Dr. Torok diagnosed Byrd with dermatitis/unspecified and pruritus. (Tr. 327-28). Dr. Torok noted fissuring in Byrd's palms, pitting in his nails, and distribution on the trunk and ordered patch testing. *Id.* During a follow-up on April 18, 2018, Byrd had scaling and fissuring over the hands and trunk, his patch tests came back negative, and Dr. Torok prescribed clobetasol topical ointment. (Tr. 288-89).

On May 9, 2018, Byrd reported to Dr. Torok that the ointment helped, but he noticed a flare-up past where his gloves covered his hands and on his face. (Tr. 315). On physical exam, Byrd had vesicular, erythematous induration on his forearm and face, as well as irritation in his lips. *Id.* Dr. Torok instructed Byrd to apply Chemetall coolant to the right antecubital fossa to determine whether he would react. *Id.*

On May 23, 2018, Byrd reported to Dr. Torok that he had a positive reaction to the coolant. (Tr. 294). Dr. Torok diagnosed Byrd with allergic contact dermatitis and instructed him that he could not work in a machine environment where coolants/chemicals were used. *Id.*

On July 14, 2018, Byrd visited Dr. Fracasso for a check-up, reporting that his arms were doing "reasonably well" after he stopped working in May 2018. (Tr. 452). However, he reported continued skin irritation. *Id.* On physical exam, Byrd had forearm irritation and dry hands. (Tr. 453).

5

On August 27, 2018, Byrd returned to Dr. Torok, reporting off and on itching and peeling in his arms, as well as elbow swelling. (Tr. 298). On physical exam, Byrd had tender focal swelling on the posterior elbow. *Id.* Dr. Torok diagnosed Byrd with olecranon bursitis and recommended NSAIDs. *Id.*

### C. Relevant Opinion Evidence

On August 5, 2018, Dr. Torok completed a form medical source statement, consisting of fill-in-the-blank questions and checkboxes. (Tr. 485-88). In the fill-in-the-blank portions of the form, Dr. Torok stated that Byrd had diagnoses of hypothyroid and contact irritant dermatitis, his prognosis for which was "Good." (Tr. 485). In the remainder, Dr. Torok checked boxes indicating that: (i) Byrd could work a 40-hour workweek, just not as a machinist; (ii) Byrd had no limitations with sitting, walking, standing, lifting, carrying, reaching, fine or gross manipulation, twisting, stooping, crouching, or climbing; (iii) he did not need to take unscheduled breaks; (iv) he did not need to elevate his legs; and (v) he was capable of high stress work. (Tr. 485-88). In response to question 10(n), where she was asked, "Are your patient's impairments likely to produce 'good days' and 'bad days?' Dr. Torok answered "No." The subsequent sub-question stated: "*If yes*, assuming your patient was trying to work full time, please estimate, on average, how many days per month your patient is likely to be absent from work as a result of the impairments or treatment[?]" (Tr. 487 (emphasis added)). In response, Dr. Torok checked a box indicating that Byrd would likely be absent from work more than four days per month. (Tr. 487).

### D. Relevant Testimonial Evidence

Byrd testified at the ALJ hearing that despite no longer working as a machinist, his skin still broke out if he tried to paint or pump gas. (Tr. 43-44). He also experienced break outs

6

when walking through areas with chemical fumes. (Tr. 44). When he experienced rashes, they lasted for up to three days and his symptoms included itching, swelling, and pain. (Tr. 51).

### III. Law & Analysis

#### A. Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). And, even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'" *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Jones*, 336 F.3d at 477); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"). But, even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."). And the court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS

7

157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked.").

**B.     Dr. Torok's Opinion**

Byrd argues that the ALJ failed to apply proper legal standards when he overlooked Dr. Torok's opinion on Byrd's absenteeism as a result of his contact dermatitis. ECF Doc. 12 at 10. Byrd argues that, because the ALJ found Dr. Torok's opinion persuasive, the ALJ had to explain why he did not account for the absenteeism aspect of Dr. Torok's opinion. *Id.* Thus, Byrd argues that a remand is warranted for the ALJ to reassess Dr. Torok's opinion. ECF Doc. 12 at 11.

The Commissioner responds that the ALJ's omission was warranted because Dr. Torok's opinion on absenteeism was effectively an opinion on the ultimate issue of disability, which is an issue reserved to the Commissioner. ECF Doc. 13 at 7-8. Alternatively, the Commissioner argues that the error was harmless because Dr. Torok's opinion on absenteeism was patently deficient, in that it was an improper checklist opinion with no evidentiary support. ECF Doc. 13 at 8-9. As a second alternative, the Commissioner argues that is "apparent" that Dr. Torok's opinion on absenteeism was a typographical error. ECF Doc. 13 at 9.

In his reply brief, Byrd argues that the Commissioner's arguments for harmless error amount to improper post hoc rationalizations. ECF Doc. 15 at 1-2. He argues that the ALJ did not question the propriety of Dr. Torok's opinion; there is caselaw holding that opinions on absenteeism do not tread on any issue reserved for the Commissioner; his case is distinguishable from those cited by the Commissioner; and the Commissioner failed to develop his typographical-error argument. ECF Doc. 15 at 2-6.

8

At Step Four of the sequential evaluation process, the ALJ must determine a claimant's RFC after considering all he medical and other evidence in the record. 20 C.F.R. § 404.1520(e). In doing so, the ALJ is required to "articulate how [he] considered the medical opinions and prior administrative medical findings." 20 C.F.R. § 404.1520c(a). At a minimum, the ALJ must explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). And when an ALJ finds persuasive some parts of a medical opinion and not others, he must explain why the parts of the opinion which conflict with his RFC findings were not adopted. *See Davis v. Comm'r of Soc. Sec.*, No. 5:20-cv-2807, 2021 U.S. Dist. LEXIS 244915, at *29 (N.D. Ohio Nov. 24, 2021) (citing SSR 96-8p, 1996 SSR LEXIS 6 at *7 (July 2, 1996)).

The ALJ failed to apply proper legal standards in his evaluation of Dr. Torok's opinion. 42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241. The ALJ found Dr. Torok's opinion "persuasive," reasoning that the statements contained therein were "from the claimant's treating dermatologist who is familiar with his condition, and the findings are consistent with the medical record." (Tr. 22). That opinion included a statement by Dr. Torok that Byrd would be absent from work more than four days per month. (Tr. 487). Yet the ALJ's RFC findings included no such limitation. (Tr. 19). And the conflict between the two, as both parties point out, stems from the ALJ's mistaken impression that Dr. Torok's opinion contained "no other limitations" than Byrd's inability to work as a machinist. (Tr. 22). The ALJ, therefore, created a conflict between his finding that Dr. Torok's opinion was persuasive and his RFC findings that he failed to reconcile with an explanation. *See Davis*, No. 5:20-cv-2807, 2021 U.S. Dist. LEXIS 244915, at *29.

The question becomes, then, whether the ALJ's omission can be overlooked as harmless. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009). I am not convinced by

9

the Commissioner's argument Dr. Torok mistakenly checked a box indicating that Byrd would be absent from work more than four days per month. The Commissioner cites no case in which part of a medical opinion has been determined to be a mere "typographical error." *See* ECF Doc. 13 at 9 (citing instead caselaw on remanding for "idle and useless" formalities). And it's not so obvious to me that Dr. Torok meant to check a different box that the court can affirm the ALJ's decision on that basis. *Cf. Thompson v. Comm'r of Soc. Sec.*, No. 1:13-cv-67, 2014 U.S. Dist. LEXIS 42803, at *18 (W.D. Mich. Mar. 31, 2014) ("If the ALJ felt that there was a substantive problem with the opinion, then the ALJ could have re-contacted the doctor for an explanation). I concur with Byrd that the Commissioner did not fully develop this contention in any event. And, even though the court *could* conceive that Dr. Torok mistakenly opined on the number of days per month Byrd would be absent – because she was only to have answered that question if she had first found that Byrd was likely to have "good days" and "bad days," it is not for the court to construct arguments for the ALJ or the Commissioner. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 50 (1983); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

I am also not persuaded by the Commissioner's argument that an opinion on absenteeism intrudes into a matter reserved for the Commissioner. The Commissioner's position is understandable; such opinions sometimes "come close to stating an ultimate opinion about the existence of a disability." *Sharp v. Barnhart*, 152 F. App'x 503, 509 (6th Cir. 2005). But the Sixth Circuit has rejected the broad assertion that "the issue of disability based upon frequent absenteeism … remains an issue reserved to the Commissioner." *Id.* Courts within this circuit have rejected similar arguments by the Commissioner. *E.g.*, *Alexander v. Saul*, No. 1:20-cv-00116, 2021 U.S. Dist. LEXIS 109914, at *12-13 (W.D. Ky. June 11, 2021); *Palmore v. Comm'r*

10

*of Soc. Sec.*, No. 1:20-cv-36, 2021 U.S. Dist. LEXIS 59167, at *25 (S.D. Ohio Mar. 29, 2021); *Harry v. Comm'r of Soc. Sec.*, No. 19-13245, 2020 U.S. Dist. LEXIS 250746, at *21 n.5 (E.D. Mich. Dec. 21, 2020); *Avery v. Comm'r of Soc. Sec.*, No. 1:19-cv-1963, 2020 U.S. Dist. LEXIS 84878, at *30-31 (N.D. Ohio May 14, 2020). And the caselaw the Commissioner marshals to support the argument does not stand for the general proposition that opinions on absenteeism can be disregarded without explanation. ECF Doc. 13 at 8-9.[3]

Notwithstanding the above, I find that the ALJ's omission with respect to Dr. Torok's opinion on Byrd's absenteeism was harmless. An error in an ALJ's evaluation of the opinion evidence may be harmless when the opinion was "so patently deficient that the Commissioner could not possibly credit." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).[4] As the Commissioner argues, Dr. Torok's opinion on absenteeism was part of a four-page check box form with no explanation beyond a diagnosis to support it. (Tr. 486-88). The Sixth Circuit has held that such opinions meet the patently deficient standard. *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016). And a court may affirm an ALJ's evaluation of a medical opinion even when the ALJ does not call attention to the patently deficient nature of it.

---

[3] *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) (stating that a medical source's "implied opinion that plaintiff was unable to work is tantamount to a disability opinion, a matter reserved to the Commissioner for determination."); *Littleton v. Comm'r of Soc. Sec.*, No. 5:12-cv-02756, 2013 U.S. Dist. LEXIS 164311, at *22-23 (N.D. Sept. 16, 2013) (stating that an opinion that the claimant would miss three or more days was not a "medical opinion" for which an ALJ needed to provide "good reasons" under the treating physical rule before rejecting it, but that the ALJ had to nevertheless "explain why such an opinion has not been followed"); *Saulic v. Colvin*, No. 5:12CV2753, 2013 U.S. Dist. LEXIS 131960, at *29-30 (N.D. Ohio Sept. 16, 2013) (same as *Littleton*).

[4] Although the harmless-error analysis articulated in *Wilson* concerned the pre-March 27, 2017 regulations, district courts within this circuit have applied that analysis to the post-March 27, 2017 regulations. *Moulden v. Kijakazi*, No. 1:20-CV-00152, 2022 U.S. Dist. LEXIS 9342, at *18-19 (W.D. Ky. Jan. 18, 2022); *Lucas v. Comm'r of Soc. Sec.*, No. 1:20-CV-01791, 2021 U.S. Dist. LEXIS 249870, at *19-20 (N.D. Ohio Nov. 30, 2021); *Hickman v. Comm'r of Soc. Sec.*, No. 2:20-cv-6030, 2021 U.S. Dist. LEXIS 215187, at *14 n.5 (S.D. Ohio Nov. 8, 2021); *Vaughn v. Comm'r of Soc. Sec.*, No. 20-cv-1119, 2021 U.S. Dist. LEXIS 134907, at *33 n.8 (W.D. Tenn. July 20, 2021); *Burba Comm'r of Soc. Sec.*, No. 1:19-CV-905, 2020 U.S. Dist. LEXIS 179252, at *12 (N.D. Ohio Sept. 29, 2020).

*Marks v. Comm'r of Soc. Sec.*, No. 1:16-cv-02848, 2018 U.S. Dist. LEXIS 20220, at *23 (N.D. Ohio Jan. 12, 2018) (collecting cases). Therefore, any claimed error the ALJ may have made in evaluating Dr. Torok's opinion was harmless. *See Paradinovich v. Comm'r of Social Sec.*, No. 1:20-CV-01888, 2021 U.S. Dist. LEXIS 213589, at *24-25 (N.D. Ohio Sept. 28, 2021).

The harmless nature of the error is easily understood if Dr. Torok's opinion is read as a whole and with commonsense in light of the entire ALJ decision. *See Buckathorn ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010). Dr. Torok did not opine that Byrd had any physical limitations at all; but she unequivocally stated that he could not engage in work that "is in oil/coolants or as a machinist." (Tr. 492). Expressing an unexplained opinion that someone with zero physical or mental limitations would be expected to be absent from work as a result of unidentified impairments and unexpressed treatments is patently deficient. The Torok opinion stands for the proposition that Byrd is capable of work in every occupation except those involving oils or coolants or machinist activities. Byrd suffered no harm from the ALJ's failure to state that he discounted the absenteeism opinion of Dr. Torok on patent deficiency grounds.

## IV. Recommendation

Because any error the ALJ may have made in evaluating the opinion evidence was harmless, I recommend that the Commissioner's final decision denying Byrd's application for DIB be affirmed.

Dated: May 5, 2022

Thomas M. Parker
United States Magistrate Judge

_____

**Objections, Review, and Appeal**

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist. LEXIS 100383, *6 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).